IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| Philip Tracy, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| vs. § | Civil Action No.   3:16-cv-233 |
| § | |
| Ford Motor Company, § | |
| § | |
| *Defendant.* § | |

## PLAINTIFF'S COMPLAINT

**To the Honorable United States Judge of Said Court:**

COMES NOW, Philip Tracy (hereinafter referred to as "Plaintiff"), and respectfully files this Complaint against Ford Motor Company (hereinafter referred to as "Defendants"), and in support hereof would state and show the following:

### I. Parties

1. Plaintiff Philip Tracy is an individual, and he resides in and is a citizen of Rosenberg, Texas.

2. Defendant Ford Motor Company is a foreign Corporation doing business in Arkansas, and service of process upon this Defendant may be had by serving its registered agent for service, CT Corporation at 1999 Bryan, Suite 900, Dallas, Texas 75201.

## II. Jurisdiction

3. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

4. The parties to this lawsuit are citizens of difference states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Facts

5. On or about April 30, 2016, Philip Tracy was driving a 2005 Ford Focus (VIN#1FAFP34N05W151248) traveling westbound on Highway 6 in Galveston County, Texas.

6. The subject vehicle was designed by Defendant.

7. The subject vehicle was manufactured by Defendant.

8. The subject vehicle was also assembled and tested by Defendant.

9. The subject was struck by an eastbound vehicle attempting to cross Philip Tracy's lane of travel.

10. At the time of the accident, Philip Tracy was properly seated and properly wearing the available 3-point seat belt.

11. However, despite being properly seated and properly wearing the available 3-point seat belt, Philip Tracy sustained serious injuries when the vehicle failed to protect him because it violated several crashworthiness principles.

12. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    a. Maintain survival space;

      b.    Provide proper restraint throughout the entire accident;

      c.    Prevent ejection;

      d.    Distribute and channel energy; and

      e.    Prevent post-crash fires.

13.   When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included the above definition of crashworthiness.

14.   Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

15.   Vehicle manufactures have known for decades and have admitted under oath that there is a distinction between the cause of the accident versus the cause of an injury.

16.   Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.

17.   Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

18.   General Motors has stated in the past that, "The rich don't deserve to be safer…Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

19.   Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the

goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

20. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

21. Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

22. While there are minimum performance standards which an automaker is supposed to meet before selling a vehicle in the United States (the FMVSS), these minimum performance standards to not adequately protect the public.

23. Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were intended to Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

24. Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of

a federal safety regulator." It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they regulate."

### IV. Cause(s) of Action as to Defendant

25. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

26. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

27. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

28. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

29. Defendant either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to the Plaintiff.

30. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that

the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

  a. The vehicle fails to provide proper safety in narrow, frontal offset impacts;
  b. The vehicle fails to protect the lower legs in narrow, frontal offset impacts;
  c. The vehicle fails to reinforce the toe-board, foot-well and floor-pan area properly;
  d. The vehicle fails to use knee airbags that have been used on production vehicles since 1998;
  e. The vehicle fails to use 100 mm knee bolsters that have been in production vehicles since the 1980's;
  f. The vehicle fails to use boron steel and UHSS that has been in vehicles since the 1990's;
  g. The vehicle violated principles of crashworthiness;
  h. The vehicle violates the consumer expectation test because consumers expect their lower legs to be protected in frontal impacts;
  i. The vehicle violates the consumer expectation test because consumers expect the manufacturer to conduct proper and thorough testing and engineering analysis to ensure the lower legs are protected; and
  j. The vehicle defects were the direct, producing and proximate cause of the injuries and damages in question.

31. The Defendant was negligent in the following respects:

  a. The Defendant failed to test with load cells on the lower legs;
  b. The Defendant failed to evaluate using a knee airbag;
  c. The Defendant failed to evaluate using a 100 mm bolster;
  d. The Defendant failed to evaluate using boron and UHSS in the toe-board, foot-well, floor-pan and knee bolster area; and
  e. The negligence was the direct, producing and proximate cause of the injuries and damages in question.

32. Defendant was negligent in the design, manufacture, assembly, marketing, and/or testing of the vehicle in question.

33. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

34. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

35. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

36. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

37. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

38. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

39. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

40. When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicle. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

41. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

42. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

43. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

44. The foregoing acts and/or omissions of Defendant were the producing, direct, and/or proximate cause of the Plaintiff's serious injuries and Plaintiff's damages.

## V. Damages to Plaintiff

45. As a result of the acts and/or omissions of Defendant, Plaintiff has endured pain and suffering, impairment, and disfigurement, interference with his daily activities and a reduced capacity to enjoy life as a result of his injuries.

46. As a result of the acts and/or omissions of Defendants, Plaintiff Philip Tracy has become obligated to pay extensive medical expenses as a result of his injuries.

47. As a result of the acts and/or omissions of Defendant, Plaintiff has suffered lost wages in the past and in all likelihood will into the future as a result of his injuries.

48. The above and foregoing acts and/or omissions of the Defendant, resulting in the serious injuries to Plaintiff Philip Tracy, has caused actual damages to Plaintiff in an amount within the minimum jurisdictional limits of this Court.

## VI. Prayer

49. For the reasons presented herein, Plaintiff prays that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendant for:

   a. actual damages;
   b. prejudgment and post-judgment interest beginning April 30, 2016;
   c. costs of suit; and
   d. all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**

  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas  75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiff**